IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CV-116-F

| | |
|---|---|
| FIKISHA A. MEADOWS, ) <br> ) <br> Plaintiff/Claimant, ) <br> ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | **MEMORANDUM AND** <br> **RECOMMENDATION** |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-30, -36] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Fikisha A. Meadows ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on March 7, 2011, alleging disability beginning October 1, 2008. (R. 21, 163-71). The claim was denied initially and upon reconsideration. (R. 21, 70-98). A hearing before the Administrative Law Judge ("ALJ") was held on September 25, 2013, at which Claimant, represented by counsel, and a vocational expert

("VE") appeared and testified. (R. 40-63). On December 20, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 18-39). On March 24, 2015, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then commenced the instant action, seeking judicial review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since her alleged onset date. (R. 23). Next, the ALJ determined Claimant had the

3

following severe impairments: history of hemiarthroplasty of the left shoulder; history of cervical fracture, tibia fracture, and bilateral ankle fractures; posttraumatic stress disorder ("PTSD"); hypertension; and obesity. *Id.* However, at step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23-25). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild difficulties in social functioning and activities of daily living and moderate difficulties with concentration, persistence, or pace, with no episodes of decompensation of an extended duration. (R. 25).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform sedentary work[1] with the following limitations: occasional climbing of stairs or ramps; occasional bending/balancing, stooping, crawling, kneeling, or crouching; never climbing ladders, ropes, or scaffolds; occasional overhead reaching with the left upper extremity; no more than frequent in all other directions with the left upper extremity; simple routine repetitive tasks; avoid concentrated exposure to cold and moisture; occasional pushing and pulling with the lower extremities; and no jobs requiring the use of foot pedals with the left foot. (R. 26-32). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely credible. (R. 27). At step four, the ALJ concluded Claimant was unable to perform her

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

past relevant work. (R. 32). Nevertheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 33).

Claimant contends that the ALJ erred in evaluating the opinion evidence, resulting in an RFC not supported by substantial evidence. Pl.'s Mem. [DE-31] at 6-15.

## V. DISCUSSION

### A. The ALJ's Evaluation of the Opinion Evidence

Claimant contends the ALJ improperly attributed only partial weight to the opinions of Dr. Mozie and Dr. Murfin, gave great weight to a non-opinion from Dr. Moeller, failed to weigh the opinion of Dr. Hicks, and failed to weigh a disability rating from the Department of Veterans Affairs (the "VA"). Pl.'s Mem. [DE-31] at 6-13. Claimant further contends that the ALJ's error in weighing the opinion evidence resulted in an RFC not reflective of her actual capabilities, particularly with respect to her ability to use her left arm. *Id.* at 14-15. Defendant contends that the ALJ properly weighed the opinion evidence and that, alternatively, any error was harmless. Def.'s Mem. [DE-37] at 15-28. While the ALJ did err in analyzing some of the opinion evidence, the ultimate decision is supported by substantial evidence, rendering the error harmless.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative

5

effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

6

Case 7:15-cv-00116-F  Document 39  Filed 08/22/16  Page 6 of 18

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

### 1. The Medical Evidence

Claimant formerly served in the Navy as a boatswain's mate until she received a medical discharge in 2007. (R. 46-47). On February 4, 2006, Claimant sustained several severe injuries in a motor vehicle accident, including fractures of her left shoulder, both ankles, and the left tibial plateau. (R. 416-17). Claimant initially underwent surgery to repair her injuries (R. 423-27), subsequently required further procedures over the next several months (R. 458), and received additional physical therapy for her left shoulder from February to April 2007 that improved her pain

7

and range of motion (R. 468-69, 472, 474).

Claimant next presented to Dr. Murfin, a consultative examiner, on February 25, 2008, for a disability examination. (R. 458-61). Dr. Murfin indicated Claimant had marked limitation to full range of motion in her shoulder, was not able to raise her arm above her head, and had difficulty dressing as a result. (R. 458). Dr. Murfin further indicated that Claimant walked with a cane and experienced pain in her shoulder and ankles, for which she had taken narcotics, but had been out of all her prescription pain medication for several weeks. *Id.* Dr. Murfin's relevant impressions were joint pain as a result of her injuries that persists at rest and limits Claimant's capacity for prolonged standing or walking and prevents her from lifting or handling objects with her left arm. (R. 460). On March 6, 2008, Claimant presented to Dr. Gibbs, a consultative examiner, for a psychological evaluation. (R. 464-66). Dr. Gibbs diagnosed Claimant with PTSD and strongly encouraged her to seek mental health intervention, but opined that in the work setting she would be capable of understanding simple and even relatively complex instructions and tasks, her ability to effectively deal with others and respond to work pressures would be mildly impaired, and her primary work restrictions would stem from physical limitations. (R. 465).

Claimant next presented in the naval hospital emergency department on January 19, 2010, with left shoulder pain lasting three days. (R. 490-93). The doctor noted that it appeared two screws had come loose, administered Vicodin, and referred Claimant to the orthopedic clinic for a consultation. *Id.* On January 20, 2010, Claimant presented to the orthopedic clinic, noting increased left-shoulder pain over the prior six months without trauma and was referred for further consultation. (R. 488). On February 6, 2010, it was noted that the prior two surgical attempts to repair Claimant's fractured shoulder had failed, as evidenced by broken hardware and pain, and Claimant underwent

8

a left shoulder hemiarthroplasty or joint replacement. (R. 495-96). On March 1, 2010, Claimant presented to Dr. Birnstein for a three-week post-surgical follow-up for her shoulder. (R. 484-86). Claimant reported doing fairly well but for her pain medicine being too strong and some numbness in her thumb and index finger. (R. 485). Claimant's implant was noted to be in good position with no sign of dislocation on x-ray. *Id.* Dr. Birnstein directed Claimant to remain in a sling for the next three weeks, continue range of motion exercises of her wrist, elbow, and hand, return for a follow-up visit in three weeks, and also noted that she would likely start Claimant in physical therapy in three weeks. (R. 485-86).

On August 10, 2010, Claimant presented to Dr. Hicks for a periodic physical examination related to her placement on the Temporary Disability Retirement List ("TDRL"). (R. 482, 498). Claimant reported severe pain in her left knee and left shoulder. (R. 482). Dr. Hicks noted Claimant's February shoulder surgery with continued pain and range of motion limitations and explained to Claimant that she required continued care and that no one there was treating her injury. *Id.* Claimant indicated she would make follow-up arrangements, and Dr. Hicks said he would help her if needed. *Id.* On August 12, 2010, Dr. Hicks issued a "Report of Periodic Physical Examination," noting Claimant's placement on the TDRT in 2007 related to her multiple fractures. (R. 498). Dr. Hicks noted Claimant's right ankle eventually healed and the status was weightbearing as tolerated, she reported pain and markedly decreased range of motion in her left shoulder, some knee pain, and right ankle pain when she is "on it for a while." (R. 499). Examination showed full extension of flexion of the left knee with painful crepitance throughout the range of motion, and limited range of motion in the left shoulder of 10 degrees abduction, forward flexion, and external rotation. *Id.* Dr. Hicks recommended Claimant be moved from Temporary Retired to Permanent

9

and stated he did "not believe she will recover to any degree to be back to active duty." (R. 500). Dr. Hicks also restricted Claimant from Physical Readiness Training, running, heavy lifting, prolonged walking, standings, crawling, and entering any areas where an unsteady gait would pose a danger to herself or others. *Id.*

A document entitled "Findings of the Physical Evaluation Board Proceeding," printed on November 8, 2010 and date-stamped December 2, 2010, found Claimant had a 40 percent combined disability rating, with 30 percent attributed to her left shoulder, 10 percent attributed to her right ankle, and 10 percent attributed to her left tibial plateau. (R. 501). Following that document in the record is a second undated document, with the first page missing, that appears to be a reconsideration of Claimant's disability rating decision. (R. 502-06). In it, Claimant is assessed a 70 percent combined disability rating, with 20 percent attributed to her left shoulder, 50 percent attributed to her depression (previously claimed as PTSD), 10 percent attributed to her left knee, 10 percent attributed to her right ankle, and 10 percent attributed to her left ankle. (R. 502-04). Each determination contains the following explanation:

> We reviewed the evidence received and determined your service-connected condition hasn't increased in severity sufficiently to warrant a higher evaluation. You did not attend the VA examination we scheduled in connection with your claim, and did not show good cause for your failure to do so. Therefore, medical evidence that could have been useful to support your claim was not available to us.

*Id.* In conclusion it states,

> Entitlement to individual unemployability is denied. "Entitlement to individual unemployability is denied because the you have not been found unable to secure or follow a substantially gainful occupation as a result of service connected disabilities. You failed to report to a VA examination we scheduled in connection with this claim, therefore medical evidence that could have been useful to support your claim was not available to us."

10

(R. 504).

On April 6, 2011, Claimant presented to Dr. Mozie for a consultative examination in connection with her disability claim. (R. 516-20). Claimant reported left shoulder, left knee, and bilateral ankle pain. (R. 516). Dr. Mozie noted that Claimant walked with a cane, had an antalgic gait, decreased range of motion, severe functional limitations, and severe osteoarthritis in her joints due to her multiple injuries, and a frozen shoulder. (R. 518). Dr. Mozie opined that Claimant "might benefit from physical therapy" but did not "envisage her recovery for meaningful employment." (R. 518). An x-ray of the left shoulder ordered by Dr. Mozie and reviewed by Dr. Moeller showed "[o]ld postsurgical and posttraumatic changes of the left shoulder status post partial left shoulder arthroplasty," and Dr. Moeller observed "[t]he humeral component appears high-riding relative to the glenoid and loosening of the proximal half of the humeral component cannot be excluded." (R. 523). Dr. Moeller recommended orthopedic follow up. *Id.*

On February 21, 2012, Claimant saw Dr. Mozie for a second consultative examination. (R. 565-67). She again reported pain in her left shoulder, left knee, and both ankles, that she could walk with a cane up to 1000 yards, sit for up to three to four hours, stand for ten minutes, cannot move her left shoulder or hand, and can cook, but her daughter does the laundry and shopping. (R. 565). Dr. Mozie noted that Claimant had a frozen left shoulder and significant functional limitations, ambulates with a cane to support herself, could move around the office with a cane, could not get on/off the examination table, could not tandem or squat/rise due to severe disability, and needs assistance with most of her basic activities of daily living. (R. 567). Dr. Mozie stated that Claimant

11

would benefit from physical therapy and close follow up with orthopedics[2] and a primary care physician. *Id.*

On July 13, 2012, Claimant presented to the naval hospital emergency department with left shoulder pain. (R. 631). An x-ray showed the hardware from her hemiarthroplasty unchanged and no evidence of acute injury. (R. 582). She was administered pain medication and directed to follow up at the clinic for an evaluation for physical therapy. (R. 632, 634).

**2.     Analysis**

In evaluating Claimant's RFC, the ALJ discussed Claimant's hearing testimony and the medical evidence of record, including the opinions of Dr. Murfin, Dr. Gibbs,[3] Dr. Hicks, and Dr. Mozie. (R. 26-32). The ALJ afforded partial weight to the opinions of Dr. Mozie in reducing Claimant's RFC to sedentary, but found it was insufficient to establish Claimant was incapable of all work, noting that the evaluation was for purposes of the disability determination, presumably at the request of her attorney, the fact that Dr. Mozie's opinions are inconsistent with the radiographic evidence damages his credibility, and Dr. Mozie's assessment that Claimant required assistance with her most basic activities of daily living contradicts Claimant's testimony. (R. 30-31). The ALJ afforded partial weight to the opinion of Dr. Murfin, noting that it was prior to Claimant's shoulder replacement and, therefore, only partially relevant to Claimant's current abilities. (R. 31). The ALJ afforded great weight to Dr. Moeller's reading of Claimant's left knee and shoulder x-rays, noting they establish "no significant arthritic or degenerative changes in the claimant's left knee and support

---

[2] Claimant told Dr. Mozie that she follows up with orthopedics at the naval hospital and her last appointment was in 2011 (R. 565), but later notified DDS that she was last seen by orthopedics in 2010, not 2011 as previously reported (R. 570).

[3] Claimant does not challenge the ALJ's treatment of Dr. Gibbs' opinion and, therefore, it is not discussed further.

12

a finding that the claimant's left shoulder could see improvement with further orthopedic management." (R. 32). The ALJ discussed Dr. Hicks' evaluation of Claimant and his report, including his opinion that Claimant would not recover to the point of being capable of active duty, but did not assign a weight to his opinion. (R. 29). Finally, the ALJ discussed the VA's Physical Evaluation Board assessment of a 40 percent combined disability rating, as well as the VA's denial of Claimant's entitlement to individual unemployability and her failure to report for examinations in connection with her claim, but did not discuss the 70 percent combined disability rating or assign a weight to the rating. *Id.*

The ALJ's failure to weigh Dr. Hicks' opinion was error. *See* 20 C.F.R. § 404.1527(c). However, the error under the circumstances presented here is harmless and does not warrant remand. The ALJ discussed in detail Dr. Hicks' opinion and report (R. 28-29), and the limitations which Claimant asserts the ALJ failed to discuss—no running, heavy lifting, prolonged walking, standings, crawling, and entering any areas where an unsteady gait would pose a danger to herself or others—are not inconsistent with the RFC found by the ALJ limiting Claimant to a reduced range of sedentary work. *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. Feb. 12, 2015) (unpublished) (concluding that "reversing the ALJ's decision solely because he failed to assign weight to [the doctor's] opinion would be pointless" where the court found "it is highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability."). The ALJ specifically noted Dr. Hicks' findings regarding Claimant's limited range of motion in her left shoulder. (R. 29). However, the ALJ also noted, several times throughout the decision, that Claimant failed to follow up with orthopedics and physical therapy and to pursue treatment for her shoulder, knee, and ankle impairments, despite recommendations to do

13

so by Dr. Hicks, Dr. Birnstein, Dr. Mozie, Dr. Moeller, and the emergency room doctors. (R. 27-31, 482, 485-86, 490-91, 518, 523, 567, 632). The ALJ found that when Claimant underwent physical therapy for her shoulder in early 2007, it was successful in reducing her pain and increasing her range of motion, and she was discharged without limitations. (R. 27, 468-69, 472, 474).

As discussed by the ALJ, Claimant sought little treatment for her alleged impairments: she sought no treatment related to her allegedly disabling impairments, aside from a 2008 consultative examination, from mid-2007 until January 2010 (R. 29); she sought no treatment after her March 2010 three-week follow up related to her shoulder surgery, aside from one required examination by Dr. Hicks related to her Navy work status in August 2010, until her consultative examination in April 2011 related to her disability claim, *id.*; and she sought no further treatment, except a second consultative examination in February 2012 (R. 30), until she presented in the emergency room in July 2012 (R. 31). The ALJ concluded that "there is no indicat[ion] that the claimant sought regular orthopedic treatment or physical therapy, or even primary care treatment, following her March 2010 shoulder replacement" and "the claimant's failure to follow up for treatment, or to even report for her Physical Evaluation Board examination, indicates that the claimant's limitations are not as severe as alleged." *Id.* Claimant's failure to follow prescribed treatment, as well as the failure to seek treatment, are proper considerations in making the disability determination. *See Dunn v. Colvin*, 607 F. App'x 264, 273-76 (4th Cir. June 1, 2015) (unpublished) (citing 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v); 404.1530); *Bethea v. Colvin*, No. 7:15-CV-72-FL, 2016 WL 4076849, at *6 (E.D.N.C. Aug. 1, 2016) (unpublished) ("Where 'evidence shows that in the relevant period [the claimant] had considerable access to both medical treatment and medication,' it is not error for the ALJ to 'consider[ ] the inconsistency between her level of treatment and her claims of disabling pain.'")

14

(quoting *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994)). There is no evidence in the record that Claimant lacked access to care and, to the contrary, Dr. Hicks offered to assist Claimant in obtaining follow up and continued care for her shoulder. (R. 482). Here, where the record reflects the ALJ considered Dr. Hicks opinion and remand would likely be futile, the error in failing to expressly assign a weight to Dr. Hicks' opinion is harmless. *See Barnes v. Colvin*, No. 5:12-CV-696-D, 2013 WL 6985182, at *13 (E.D.N.C. Nov. 13, 2013) (unpublished) ("Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error.") (citation omitted)), *adopted by* 2014 WL 126059 (E.D.N.C. Jan. 13, 2014).

Likewise, even assuming, *arguendo*, that the ALJ erred in affording partial weight to the opinions of Dr. Mozie and Dr. Murfin, any error is harmless where it is "highly unlikely" given Claimant's failure to pursue follow up care and treatment "that a remand to the agency would change the Commissioner's finding of non-disability." *Tanner*, 602 F. App'x at 101. With respect to the ALJ's decision to afford great weight to Dr. Moeller's reading of Claimant's x-ray, Claimant has failed to demonstrate any prejudice from the ALJ assigning weight to a non-opinion. While Claimant argues that the ALJ misread the evidence and that the 2011 x-ray shows the possibility of hardware failure in the shoulder (R. 523), a subsequent x-ray in 2012 indicated Claimant's hardware positioning was unchanged from her August 2010 x-ray and there was no evidence of an acute injury (R. 582). And, to the ALJ's point, Claimant failed to follow up with orthopedics as recommended by Dr. Moeller. (R. 30, 32). Finally, it is apparent from the ALJ's decision that he considered the VA disability rating in accordance with S.S.R. 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). (R. 29). Moreover, the ALJ's decision is not contrary to *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

15

337 (4th Cir. 2012). The ALJ discussed the Physical Evaluation Board report assessing a 40 percent combined disability rating, noted that Claimant did not attend a VA examination scheduled in connection with her disability claim, and that the VA determined Claimant was not entitled to a determination of individual unemployability. (R. 29). The ALJ's failure to mention the subsequent 70 percent combined rating was harmless, where that rating was largely comprised of Claimant's 50 percent rating for depression (R. 503). The ALJ accounted for Claimant's mental impairments in the RFC by limiting Claimant to a reduced range of sedentary work, including a limitation to simple, routine, repetitive tasks (R. 26, 32), despite Dr. Gibbs' opinion that Claimant was capable of understanding even complex instructions (R. 28, 465). Further, in the VA decision containing the 70 percent combined rating, only a 20 percent rating was assessed to Claimant's shoulder, which is less favorable to Claimant than the 30 percent rating for Claimant's shoulder recommended by the Physical Evaluation Board that the ALJ did expressly consider. (R. 501-502). And, as stated above, Claimant's failure to seek followup treatment for her shoulder and other impairments undermines her claim that these impairments are disabling. Therefore, the ALJ's treatment of the VA disability rating is supported by substantial evidence.

Finally, Claimant's argument that the RFC is not reflective of her actual capabilities, specifically related to the use of her left arm, turns on the ALJ's weighing of the opinion evidence. Pl.'s Mem. [DE-31] at 14-15. As explained above, any error by the ALJ in weighing the opinion evidence was harmless and would not likely impact the Commissioner's determination given Claimant's failure to pursue follow up care and treatment, particularly physical therapy for her shoulder that had improved Claimant's range of motion and decreased her pain in the past. The ALJ considered Claimant's impairments in light of Claimant's testimony, the treatment records, and

16

opinion evidence, and assessed a highly restrictive RFC of a reduced range of sedentary work, which is supported by substantial evidence for the reasons stated above. Accordingly, it is recommended that Claimant's motion be denied.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-30] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-36] be ALLOWED, and the final decision of the Commissioner be upheld.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 6, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **10 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written**

objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the 22nd day of August 2016.

Robert B. Jones, Jr.
United States Magistrate Judge